## The Inhabitants of SPRINGFIELD *versus* The COUNTY COMMISSIONERS OF HAMPDEN.

59

Where a highway had been laid out by the court of sessions and had been partly worked, and the commissioners of highways had refused to take supervision of it, before they were superseded by the county commissioners, it was *held*, that it was the duty of the county commissioners to take supervision of it and either discontinue it or complete it.

Upon the petition of a town for a mandamus to the county commissioners to take supervision of and to finish a part of a highway which had formerly been laid out by the court of sessions, an alternative mandamus was issued, to which the commissioners made return, that the part in question, which was a bridge, had been built by the town, with the aid of individuals, and that the expense had been voluntarily incurred by the town and the individuals after the enactment of the statute providing for the payment of similar expenses out of the county treasury; and that the bridge, immediately after its erection, was dedicated to the public, without any expectation on the part of the town that the expense would be reimbursed by the county. It was *held*, that this return was substantially good.

Exception was taken to the return, that it did not aver in what manner the bridge was dedicated, but as the proceedings of the town, which were made a part of the return, showed for what purpose the bridge had been built, and as the building of a bridge on a highway is *ipso facto* a dedication of it to the public, the return was *held* to be sufficient.

Where it did not appear by the petition for a mandamus to the county commissioners, nor on the face of the proceedings, that any part of a road had been worked by the

petitioners, nor that they had incurred any expense therefor, nor that they were requested by the commissoners of highways to construct the road, it was *held*, that it was not necessary, in the return, to notice such supposed facts.

A return to an alternative mandamus is sufficient, if it contains a full and certain answer to all the allegations expressly made in the petition for it, and discloses a fair legal reason why the mandamus should not be obeyed.

The return was allowed to be amended, after exceptions to it had been filed.

AT the term of this Court held in the county of Hampden in September 1829, the petitioners presented their petition for a *mandamus*, in which they set forth, that at a court of sessions in September 1825, a highway from the court-house in Springfield, by the manufactory of the Boston and Springfield Manufacturing Company to the line of Hampshire county, was established and damages reported and ordered to be paid, the whole of the highway being within the town of Springfield; that on the 1st of July, 1826, when the statute establishing commissioners of highways took effect, two parts of the highway, — the one from the south bank of Chicopee river, at a stake, to a pine tree on the north bank, then twenty-two rods to a stake near a house of D. Ames, — the other, from this last stake to the line of Hampshire county, about four miles, — were not worked, and the damages assessed were not paid, that by that statute, the county of Hampden was liable to pay the expense of making the road and the damages; that on August 8th, 1826, the petitioners applied to the commissioners of highways, requesting them to cause the highway to be finished and to certify the expense to the court of sessions, but the commissioners of highways dismissed the petition; that by the statute of 1827, *c.* 77, § 6, establishing county commissioners, it is provided, that " whenever any highway is already laid out or altered in any county, which it would be the duty of such county to make, under the provisions of the law, and the working of the same is not already commenced by said commissioners of highways, or by them contracted to be made, it shall be the duty of said county commissioners, to do and perform all the acts, in relation to the making of the same, which it would be incumbent upon the said commissioners of highways to do and perform if this act had not been passed; " that it is still the duty of the county to make this highway, and it became the duty of the county commissioners to discontinue the parts be-

fore mentioned, or cause the same to be worked and the expense and the damages to be paid by the county ; that at a meeting of these commissioners in April 1829, the petitioners applied to them in writing, stating the facts, and requesting them to do what the law required in the premises, and especially to cause the abovementioned parts of the highway to be completed and the expense and the damages to be paid by the county ; that the commissioners refused to take the supervision &c. and ordered the application to be dismissed.   The petitioners pray that a *mandamus* may issue to the county commissions, commanding them to proceed to the supervision and review of the highway and to cause the same to be constructed and finished, and the expense of making it to be paid by the county, and to reassess the damages and cause the same to be paid by the county.

Upon the foregoing petition the Court were of opinion, that this highway was a proper subject for the supervision and review of the county commissioners ; that they ought to determine whether it should remain, or be discontinued ; and that if they should not discontinue it, it was their duty to complete, at the expense of the county, such parts as remained unfinished, reassess the damages on such parts, and cause the same to be paid by the county.

The Court therefore granted an alternative mandamus, to which the county commissioners made a return, in which they admit the alleged proceedings of the court of sessions ; and they state, that " so much of said first part of said highway as lies between the pine tree standing on the north bank of Chicopee river, and the stake near Ames's house, and the whole of said highway from said stake to the line of the county of Hampshire, were not, on the first day of July, 1826, so fully worked in every part thereof as the public convenience required," and that the damages had not been paid before the issuing of the writ of mandamus ; they admit that petitions were presented to the commissioners of highways and to the county commissioners, and were dismissed, as alleged ; they further return, that on November 13th, 1829, in obedience to the mandamus, they proceeded to the supervision and review of the road, and that on November 27th they contracted with John

Springfield
*v.*
County
Commis-
sioners of
Hampden.

*Sept.* 19*th*
1829.

S. Abbe to finish the highway from the bridge across Chicopee river, the north end of which bridge is at or near the pine tree before mentioned, to the line of the county of Hampshire, and that it has been finished, and that on July 1st, 1830, they accepted the same and ordered payment therefor out of the treasury of the county of Hampden ; that they reassessed the damages and ordered the same to be paid out of the treasury of the county ; and as to so much of the highway as lies between the stake standing on the south bank of Chicopee river and the pine standing on the north bank, they return that after the enactment of the statute of 1825, c. 171, to wit, on April 3d, 1826, the inhabitants of Springfield, at a town meeting, in consideration that a great number of individuals and corporations had by subscription and voluntary contribution raised the sum of $1660 for the purpose of being applied to tne erection of a bridge across Chicopee river, granted the sum of $850 in aid of the subscriptions, to be paid when the bridge should be completed, and appointed a committee to inspect the building of the bridge ; that the committee, with the voluntary contributions thus raised, and the authority of the town thus granted to them, erected " a bridge upon, across and over said river from the said pine tree standing on the north bank thereof to the south bank, which said bridge was by the said inhabitants and the individuals and other corporations constructing the same, afterwards, to wit, on September 10th, 1826, dedicated and given to the public, to be by them and by all persons having occasion to pass the Chicopee river at that place, used as a public highway, and from the time of its completion to the present time it has been so used ; " that no application was made by the inhabitants of Springfield, either before the bridge was built or while it was building, to the commissioners of highways to build a bridge across the river, or to superintend or review the bridge while it was building, but it was built by the inhabitants &c. without any expectation of aid or reimbursement from the county : wherefore as to so much of the highway as extends from the pine tree on the north bank of the river to the line of the county of Hampshire, the county commissioners pray that the writ of mandamus may be dismissed ; and as to that part " which lies between the said pine tree and the south bank of said river, they could not pro-

ceed to the supervision and review thereof and cause the same to be worked, constructed and finished, and cause the expense of making the same to be paid by the county of Hampden, nor ought they so to do."

The petitioners filed several exceptions to this return.

1. The petition describes two parts of the highway and the mandamus requires the respondents to supervise those parts and cause them to be worked and finished, and the expense to be paid by the county, and the petition alleges that neither of them was worked on July 1st, 1826. As to the part north of the river the return does not confess, avoid or deny this allegation, but says, "said parts were not so fully worked in every part thereof as the public convenience required," but does not show how much was then worked, if any, or by whom, or how much expense had been then incurred, or by whom ; whether the same was done by the petitioners, and if so, whether of their own accord or under any contract, understanding or assurance from the commissioners of highways or the respondents.

2. The return sets forth a contract with Abbe, to complete one part of the road, from the river to the north line of the county, but does not say how much was worked after July 1st, 1826, or before the contract with Abbe, or by whom, or at whose expense, or under what contract or assurance the same was worked, if worked.

3. The mandamus requires the respondents to cause the expense of making the two parts to be paid by the county, and the respondents return that they made a contract with Abbe and that he finished the highway, and that they have ordered payment therefor out of the treasury of the county ; but they do not set forth whether they ordered payment of any expenses incurred prior to the contract with Abbe, nor allege any excuse for the omission, nor do they set forth how much they ordered to be paid by the county to Abbe or any other person.

4. As to the part of the highway which lies between a stake on the south bank of the river and the pine tree on the north bank, the petition alleges that the petitioners, on August 8th, 1826, presented their application to the commissioners of highways, to cause the highway to be constructed and finished, and

Springfield
v.
County
Commissioners of
Hampden.

to certify the expense to the court of sessions, in order that it might be paid by the county; and further, that the petitioners, in April 1829, presented their further application to the county commissioners, that they would cause the expense of making and completing the parts described, to be paid by the county treasurer; and the return admits that these applications were made; but it avers that "no application or request was ever made by said inhabitants, either before said bridge was built or while said bridge was building, to the commissioners of highways to erect and build a bridge across Chicopee river, or to superintend and review said bridge while it was building;" and the return admits and avers that the bridge was built upon a part of the highway, and avers that the same was completed and dedicated to the public on September 10th, 1826; and the return is therein contradictory and repugnant.

5. The return alleges that the respondents could not proceed to the supervision of the last mentioned part of the highway and cause it to be worked and finished, and cause the expense of making it to be paid by the county, and although the return alleges a pretended reason for not working and finishing it, no reason is therein set forth for not causing the expense to be paid by the county, although the petition prays therefor and the mandamus requires the same to be done.

6. The return alleges that the bridge was built by the petitioners and others, and was by them dedicated and given to the public, but it does not state how it was given to the public, whether by express act, or vote or deed, or by implied assent or by necessary implication of law.

7. As to the part of the highway lying between a stake on the south bank of the river and the pine tree on the north bank, the return does not set forth whether the whole length thereof is covered by the bridge, and does not assign any reason for not completing the same except so far as the same may be covered by the bridge.

8. The return alleges that the bridge was built by the petitioners and others and given to the public without any expectation of aid or reimbursement from the county; but it does not set forth, that when the petitioners presented their petition to the commissioners of highways on August 8th, 1826, those com-

missioners requested the petitioners to proceed in the construction of the highway and desired them to give the county the benefit of any contract they had made therefor, and assured the petitioners that their doings therein should be ratified and should not affect the legal rights and duties of the petitioners and of the county, if by law the county was then liable to make the highway ; all which was well known to the respondents, and they were requested by the petitioners to set forth the same in their return.

9. The return admits that the petitioners, on August 8th, 1826, requested the commissioners of highways to construct the abovementioned parts of the highway, and avers that one part thereof was constructed and dedicated to the public by the petitioners and others, and yet does not set forth what portion thereof was constructed subsequently to that day.

*Willard* and *G. Bliss* supported the exceptions. As to the first exception, they said that the allegation in the return, that the highway was not so fully worked as public convenience required, was the allegation of a legal conclusion, and could not be traversed. The like objection applies to other parts of the return. To show that the return was imperfect and ought to be quashed, and a peremptory mandamus to be issued, they cited Bac. Abr. *Mandamus, I ; Rex* v. *Abingdon*, 1 Ld. Raym. 559 ; *Rex* v. *Malden*, 2 Salk. 431 ; *Rex* v. *Liverpool*, 2 Burr. 723, 732 ; *Rex* v. *York*, 2 Ld. Raym. 1564 ; *Rex* v. *Doncaster*, Sayer, 37 ; *Rex* v. *Lyme Regis*, 1 Doug. 177 ; *The King* v. *York*, 5 T. R. 66 ; *Green* v. *African Meth. Episc. Soc.* 1 Serg. & Rawle, 254 ; *Rex* v. *Bower*, 1 Barn. & Cressw. 585 ; *Rex* v. *Monmouth*, 4 Barn. & Ald. 496 ; *Commonwealth* v. *Guardians of the Poor*, &c. 6 Serg. & Rawle, 469 ; *People* v. *Ulster*, 1 Johns. Cas. 64 ; *Rex* v. *Raynes*, 1 Salk. 299 ; *Rex* v. *Oxon*, 2 Salk. 428 ; *Rex* v. *Company &c. of Faversham*, 8 T. R. 352 ; 6 Dane's Abr. 323, 335. As to the fourth exception, they cited *Regina* v. *Norwich*, 2 Salk. 436 ; *S. C.* 2 Ld. Raym. 1244.

*Lathrop*, for the respondents.

After the argument, the commissioners amended their return (the petitioners however objecting), by stating that the bridge extended the whole length of way from the stake mentioned in

Springfield
*v.*
County
Commissioners of
Hampden.

65
Oct. 1st,
1830.

the writ standing on the south bank of the river, to the pine tree standing on the north bank. (See the 7th exception.) They further amended, by making a copy of the votes and proceedings of the town of Springfield in relation to the bridge, a part of the return. It appeared that at a town meeting on April 3d, 1826, a committee made a report, that it was expedient for the town to grant a sum of money to aid in the proposed erection of the bridge. As reasons for this, the report states certain advantages which the town and the public would derive from having a bridge at the place where it was afterwards built ; that no doubt the town would soon be compelled by law to do that, which in every point of view it ought to do of its own accord ; that the expense would be about $ 2500 ; that subscriptions to the amount of $ 1660 had been made, 1000 of which were subscribed on the condition that the bridge should be built in 1826 ; that a grant by the town of about $ 850 would be necessary ; that it is doubtful whether the St. 1825, c. 171, would be construed to apply to bridges, and that it was not for the interest of the town to press for such a construction ; that the uncertainty as to what would be the decision on that question, the possibility of the speedy repeal of the statute, and the large proportion of expense which would fall on the town in case the bridge should be built at the expense of the county, satisfied the committee that the town ought rather to avail itself of the subscriptions, than run the hazard of being compelled to bear the whole expense in a very short period. This report was accepted by the town, and a vote was passed granting $ 850 dollars, in aid of building the bridge, and a committee was chosen to inspect the building of it, and in case it should be built to their approbation, to apply so much of the sum granted as should be necessary in addition to the subscription, in payment of the expense.

The cause was continued *nisi*, and afterward the opinion of the Court was drawn up by

WILDE J. Notwithstanding the several objections made to the return of the county commissioners, we think it is, as amended, sufficient, and ought to be allowed.

The principal objections relate to the expenses of erecting

a bridge over Chicopee river, on the part of the highway first described in the petition.

The commissioners return that these expenses were voluntarily incurred by the inhabitants of the town of Springfield, together with other individuals and corporations, after the passage of the act providing for the payment of similar expenses out of the county treasury; that the bridge was erected by a committee of the town, and that the expenses were defrayed by the said voluntary contributions, and a grant of money from the town, and that the bridge, being thus built, was by the said inhabitants and others constructing it, immediately after its erec tion, dedicated to public use, and has been so used ever since.

By a copy of the votes and proceedings of the town, which is made a part of the return, it appears that the grant was, for reasons entirely satisfactory, freely and deliberately made; and considering these reasons, it is difficult to imagine on what grounds the town can now claim reimbursement out of the county treasury. The grant was made with a full knowledge of the law, and of all the facts and circumstances affecting the interests of the town; and it was made on a good consideration, namely, the voluntary contributions of others towards an object of common and public benefit.[1] A grant thus made is binding and cannot be recalled. There is therefore no substantial objection to this part of the commissioners' return; and the objections to the form of the return appear to us to be equally unavailing.

It is objected that the return is contradictory and repugnant, because it admits that application was made to the commissioners of highways, praying them to cause this highway to be constructed, worked and finished, and yet avers that no application was made to them to erect and build a bridge across the river. There may be an apparent, but there is no real inconsistency in this, as we understand the return. The meaning is, to admit that there was a general application to the commissioners to construct, work and finish the road; and to deny that there was any particular application to erect and build the bridge. We

[1] See *Society in Troy* v. *Perry*, 6 N. Hamp. R. 164; *George* v. *Harris*, 4 N. Hamp. R. 533; *Commissioners* v. *Perry*, 5 Hammond, 58; *Bryant* v. *Goodnow*, 5 Pick. (2d ed.) 230, note 1.

cannot doubt that this is the true meaning, when we find by another part of the return, already noticed, that the town and other contributors had, before the application, provided means for building the bridge at their own expense.

It is also objected that the return is uncertain and incomplete in this, that it does not allege in what manner the bridge was given to the public. But we think this sufficiently appears. The votes and proceedings of the town show for what purpose the bridge was built. It was built on a public highway, and consequently for public use ; and this, *ipso facto*, is a dedication to the public.[2] No other act was required.

The remaining objections are not open to the petitioners on this petition. It does not appear by the petition, nor on the face of the proceedings, that any part of the road has been worked by the petitioners, nor that they have incurred any expense therefor, excepting for the erecting and building of the bridge. Nor does it appear that the petitioners were requested by the commissioners of highways to construct the road, or any part of it, as is supposed in one of the objections to the return. The commissioners therefore were not bound, in their return, to take any notice of these supposed facts. The Court will not presume possible, nor indeed probable facts, which do not appear, for the purpose of invalidating a return. " If presumptions were to be allowed," says *Buller* J. in the case of *The King* v. *Lyme Regis*, 1 Doug. 159, " certainty in every particular would be necessary, and no man could draw a valid and sufficient return." Presumption and intendment, so far as they go, must be in favor of returns, not against them. A return is sufficient, if it contains a full and certain answer to all the allegations expressly made, and " discloses a fair legal reason why the mandamus should not be obeyed." *The King* v. *Archbishop of York*, 6 T. R. 495.

We think the return in question is thus full and certain, and discloses such a fair legal reason, and therefore must be allowed.

*Return allowed.*

---

[2] On the subject of dedication of bridges and ways, see *Hinckley* v. *Hastings*, 2 Pick. (2d ed.) 164, 165, note and cases cited ; *Valentine* v. *City of Boston*, 22 Pick. 75, 80 ; *Hobbs* v. *Inhab. of Lowell*, decided in Middlesex in 1837